**AFFIRM; and Opinion Filed June 28, 2018.**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-00784-CR

### STEPHEN TIMMS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F06-00155-WQ**

## MEMORANDUM OPINION

Before Justice Francis, Fillmore, and Whitehill
Opinion by Justice Fillmore

In 2006, a jury convicted Stephen Timms of aggravated robbery and assessed his punishment, enhanced by two prior felony convictions, at thirty-five years in prison. We affirmed the trial court's judgment on direct appeal. *Timms v. State*, No. 05-06-01402-CR, 2007 WL 1289788, at *4 (Tex. App.—Dallas, Sept. 12, 2007, pet. ref'd) (mem. op., not designated for publication). In 2015, Timms filed a pro se motion for post-conviction DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. arts. 64.01–05 (West 2006 & Supp. 2014). After the trial court appointed counsel to represent Timms, he filed a formal motion for post-conviction DNA testing pursuant to Chapter 64. The trial court denied the motion, finding that (1) the evidence Timms wanted tested was not in the State's

possession during trial and did not currently exist and (2) Timms had not established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. Timms now challenges the trial court's ruling denying post-conviction DNA testing. We resolve Timms's sole issue against him and affirm the trial court's order.

## Background

Timms was charged with the aggravated robbery of a DeSoto home. At trial, the State introduced evidence establishing Timms and Hershel Williams committed the robbery and that the vehicle used during the offense was Hershel's black Honda. During a search of the Honda, officers collected, among other things, a pair of men's work gloves and a pair of men's winter gloves. Before trial, the Southwestern Institute of Forensic Sciences (SWIFS) conducted DNA testing on the evidence, and the results showed that Timms's DNA matched the major DNA profile obtained from the work gloves. This evidence was introduced at trial. Unidentified DNA profiles were also obtained through the DNA testing. Timms argued that he had been misidentified and that the true perpetrator of the robbery was Hershel's brother, Jonathan Williams. Although Timms admitted the work gloves belonged to him, he said he did not know how the gloves ended up in Hershel's car. Timms claimed he left his gloves by a weight bench in the home of Glen Ramsey, where Hershel lived as well. Thus, according to Timms, both Jonathan and Hershel had access to the gloves. After hearing this and other evidence, the jury found Timms guilty of aggravated robbery.

Timms's motion for DNA testing requested testing of the two pairs of gloves recovered from the Honda in order to show that they contained DNA belonging to Jonathan Williams. Timms argued the discovery of Jonathan's DNA on either pair of gloves would show that

Jonathan was Herschel's accomplice in the robbery. Timms asked the trial court to order that a buccal swab be collected from Jonathan so that Jonathan's DNA could be compared to the DNA from the gloves.

After receiving notice of Timms's motion, the State reported to the trial court that the evidence in the case did not contain any DNA samples from Jonathan, and the State could not find any indication that Jonathan's DNA profile was contained in a federal or state DNA database. The State further argued that the discovery of Jonathan's DNA on either pair of gloves would not have changed the outcome of the trial.

The trial court denied Timms's motion finding the evidence sought was not in the State's possession during trial and did not currently exist and that Timms had not established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing.

## Standard of Review

We review a trial court's ruling on a motion for post-conviction DNA testing under a bifurcated standard of review. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002). "[W]e afford almost total deference to a trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor, while we review *de novo* other application-of-law-to-fact issues." *Id.* When a trial court rules on a motion for post-conviction DNA testing without conducting an evidentiary hearing, an appellate court reviews the trial court's ruling *de novo*. *Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005).

## DNA Testing

Article 64 of the code of criminal procedure governs a convicted person's request for post-conviction DNA testing and contains multiple threshold requirements that must be met

–3–

before a movant is entitled to such testing. TEX. CODE CRIM. PROC. ANN. art. 64.01–.04. The convicting court may order post-conviction DNA testing only if it finds: (1) the evidence (a) still exists and is in a condition making DNA testing possible; and (b) has been subjected to a chain of custody sufficient to establish it has not been substituted, tampered with, replaced, or altered in any material respect; (2) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and (3) identity was or is an issue in the case. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A)-(C); *Leal v. State*, 303 S.W.3d 292, 296 (Tex. Crim. App. 2009). In addition, the trial court may order the requested post-conviction DNA testing only if "the convicted person establishes by a preponderance of the evidence that . . . the person would not have been convicted if exculpatory results had been obtained through DNA testing." TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A); *Ex parte Gutierrez*, 337 S.W.3d 883, 889 (Tex. Crim. App. 2011). The convicted person bears the burden of meeting all statutory predicates. *See Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008).

**Preservation of Error**

To preserve an issue for appellate review, a complaining party is required to show: (1) a timely and specific request, objection, or motion bringing the issue to the trial court's attention; and (2) the trial court ruled on the party's request, objection, or motion, or the trial court refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Haley v. State*, 173 S.W.3d 510, 516 (Tex. Crim. App. 2005); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003).

Timms argues the trial court erred by failing to ensure compliance with article 64.035 by ordering the unidentified profiles obtained through pretrial DNA testing to be compared to DNA profiles stored in federal and state DNA databases. But the record does not reflect that Timms

asked for or received a ruling on any request regarding compliance with article 64.035. *See Shannon v. State*, 116 S.W.3d 52, 54–55 (Tex. Crim. App. 2003) (rules of preservation apply to motions for post-conviction DNA testing). Nor does Timms cite to the record showing he made this argument below. *See id.* (appellant may not complain on appeal if appellant did not ask trial court to make inquiry of State about existence of evidence). Accordingly, we conclude Timms has not preserved this issue for appeal.

## Article 64

Even if we consider Timms's argument that he was entitled to have the unidentified DNA profiles in this case compared to DNA profiles stored in federal and state DNA databases, article 64.035 has no application to unidentified profiles obtained through pretrial DNA testing conducted outside the context of a Chapter 64 proceeding. Article 64.035 states:

> If an analyzed sample meets the applicable requirements of state or federal submission policies, *on completion of the testing under Article 64.03*, the convicting court shall order any unidentified DNA profile to be compared with the DNA profiles in:
> (1) the DNA database established by the Federal Bureau of Investigation; and
> (2) the DNA database maintained by the Department of Public Safety under Subchapter G, Chapter 411, Government Code.

TEX. CODE CRIM. PROC. ANN. art. 64.035 (emphasis added). Article 64.035 applies upon completion of DNA testing that has been ordered pursuant to article 64.03. Because the unidentified DNA profiles in this case were collected and analyzed during pretrial DNA testing, not in the post-conviction phase of the case, the trial court did not err by failing to take action under the provisions of article 64.035. We overrule Timms's complaint.

## Conclusion

We conclude that Timms failed to preserve his complaint for appellate review.  However, even if we addressed the merits of his complaint, the facts of this case do not the meet the Chapter 64 requirements for DNA testing.  We resolve Timms's sole issue against him.

We affirm the trial court's order.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)

170784F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEPHEN TIMMS, Appellant

No. 05-17-00784-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas,
Trial Court Cause No. F-0600155-WQ.
Opinion delivered by Justice Fillmore, Justices Francis and Whitehill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 28th day of June, 2018.